

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 02-07-301-CV

ROBERT STANTON, AS                                                  APPELLANT
SUCCESSOR IN INTEREST TO
HOSPITALITY INNOVATORS, INC.

V.

FORUM ARLINGTON                                                      APPELLEE
PROPERTIES, LTD.

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

The trial court granted summary judgment for Appellee Forum Arlington

Properties, Ltd. ("Forum Arlington") and found that Forum Arlington had

properly terminated a lease between it and Appellant Robert Stanton.  Stanton

now appeals, arguing in one issue that the trial court erred by granting summary

---

[1] *See* Tex. R. App. P. 47.4.

judgment because a genuine issue of material fact exists as to whether the lease was properly terminated. Because we hold that the lease was properly terminated, we affirm.

In July 1993, Hospitality Innovators, Inc. ("Hospitality") entered into a ten-year commercial lease with Forum, Ltd., Forum Arlington's predecessor. The lease provided that Hospitality would use the premises to operate a dance club. An amendment to the lease allowed Hospitality to renew for two successive five-year terms.

Section fourteen of the lease required Hospitality to maintain throughout the lease term an occurrence-based comprehensive general liability ("CGL") insurance policy and to name landlord Forum, Ltd. as an additional insured. After the lease was executed, Forum Arlington acquired the property and became the successor landlord under the lease.

The Texas Secretary of State revoked Hospitality's charter in February 1998, and according to Stanton, he became the successor in interest to the lease as Hospitality's sole stockholder. In 2003, however, attorney Michael Hassett (the attorney who represented Stanton in the trial court in this case) notified Forum Arlington in writing that he represented Midnight Country Club, Inc. ("MCC"), d/b/a Desperado's, the successor to Hospitality with respect to the lease, and that his client was renewing the lease. Stanton contended in the

2

trial court that MCC was a corporation he created to sublease from Hospitality and to operate Desperado's.

In 2005, Angelinaisela Aranda filed a lawsuit against Desperado's and Forum Arlington, alleging that while she was at the club, she was injured by a security guard working there. After the lawsuit was filed, Forum Arlington's insurance carrier sent a letter to Hospitality, noting that the lease required Hospitality to carry insurance naming Forum Arlington as an additional insured and to indemnify Forum Arlington. The insurance carrier requested Hospitality to defend and indemnify Forum Arlington with respect to the Aranda lawsuit. Several months later, an attorney for Forum Arlington sent a letter to an attorney representing Desperado's, noting that he had previously requested a copy of any insurance policy covering Desperado's, that the documents had not been provided, and that he understood that Desperado's either had not maintained an insurance policy or had failed to list Forum Arlington as an additional insured. Consequently, Forum Arlington had filed a cross-action against MCC d/b/a Desperado's for breach of contract, contribution, and indemnity. Subsequently, MCC filed for bankruptcy protection, and on February 8, 2006, the lawsuit was removed from the trial court's active docket.

On February 27, 2006, Stanton filed an original suit against Forum Arlington; Forum, Ltd.; and Henry Real Estate Services, L.L.C. seeking a

3

declaratory judgment and to interplead funds. He alleged that Forum Arlington had failed and refused to comply with the lease terms in that it failed to provide gas service, to light or stripe the parking areas, to provide electricity to the property, and to maintain common areas in the shopping center. He also alleged that he did not know who had the right to receive rent payments because Forum, Ltd. was the original landlord, but he believed that Forum Arlington may have purchased the property, and Henry had directed Stanton to make rent payments directly to Henry. Stanton asked the court to determine the true landlord under the lease and to declare that the lease was still valid and in full force and effect.

Forum Arlington filed an answer and counterclaim asserting that it was the landlord under the lease and seeking among other relief a declaration that the lease had terminated. Forum Arlington subsequently filed a motion for partial summary judgment, seeking a declaration that the lease had terminated by reason of default because Stanton had failed to indemnify Forum Arlington in the Aranda lawsuit and because he had failed to maintain a general liability insurance policy and name Forum Arlington as an additional insured. In his response, Stanton alleged that he had provided Forum Arlington with a certificate of insurance naming Forum Arlington as an additional insured. Stanton attached to his response a certificate of insurance showing an effective

4

date of April 11, 2006.  Forum Arlington objected to this evidence on relevancy grounds, arguing that the certificate was not relevant to the issue of whether Stanton had maintained the required insurance policy at the time of the events giving rise to the 2005 Aranda lawsuit.  The trial court sustained the objection, striking the evidence.  After a hearing, the trial court granted Forum Arlington's motion, and Stanton now appeals.

We review declaratory judgments under the same standards as other judgments and decrees.[2]  Thus, we review a declaratory judgment decided by summary judgment under the same standard of review by which we review summary judgments generally.[3]  A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[4]  When reviewing a summary judgment, we take as true all evidence favorable

---

[2] Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2008); *Truck Ins. Exch. v. Musick*, 902 S.W.2d 68, 69 (Tex. App.—Fort Worth 1995, writ denied).

[3] Tex. Civ. Prac. & Rem. Code Ann. § 37.010; *Bowers v. Taylor*, 263 S.W.3d 260, 264 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

[4] *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[5]

On appeal, Stanton argues that the trial court erred by granting summary judgment on Forum Arlington's declaratory judgment action because a material fact issue exists as to whether the lease was properly terminated. We first examine the lease to determine on what grounds Forum Arlington could terminate the lease. The construction of an unambiguous lease is a question of law.[6] Neither party contends that the lease is ambiguous. We therefore look at the lease's terms as to termination, giving those terms their plain meaning unless doing so would clearly defeat the parties' intentions.[7] In doing so, we are mindful of Texas law holding that a landlord cannot forfeit a lease for a tenant's failure to comply with lease provisions without first making demand for performance unless the lease contract contains a waiver of such demand.[8]

---

[5] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

[6] *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002).

[7] *Id.*

[8] *Wendlandt v. Sommers Drug Stores Co.*, 551 S.W.2d 488, 490 (Tex. Civ. App.—Austin 1977, no writ).

Section fourteen of the lease requires Hospitality to maintain an occurrence-based CGL insurance policy, naming the landlord as an additional insured. The section also requires Hospitality to provide to the landlord the originals of the policy or duplicates of the originals. Section seventeen of the lease provides that it is an event of default if Hospitality fails to comply with any provision of the lease and, after notice, fails to cure or attempt to cure within fifteen days. No particular form of notice is required, although section twenty-seven requires any notice given under the lease to be in writing. Also under section seventeen, upon an event of default, the landlord has the option to terminate the lease by giving Hospitality twenty days' notice. Section seventeen also provides that the landlord may take such action upon an event of default without first providing any demand whatsoever. Thus, under the terms of the lease, it was an event of default if Hospitality failed to maintain an appropriate insurance policy naming Forum Arlington as an additional insured and provide originals or duplicates of those policies to Forum Arlington and also failed to cure or begin to cure its failure within fifteen days of notice of its noncompliance with the lease. In the event of such default, Forum Arlington could terminate the lease upon twenty days' notice without first making any further demand to Hospitality that it come into compliance or giving Hospitality further opportunity to cure.

7

We next determine whether Forum Arlington established as a matter of law that it properly terminated the lease in accordance with its terms. The summary judgment evidence shows that on May 20, 2005, the insurance carrier for Forum Arlington sent a letter to Hospitality notifying it that under the lease, Hospitality was required to indemnify Forum Arlington and to have named Forum Arlington as an additional insured on an insurance policy covering the premises. The letter requested that Hospitality defend and indemnify Forum Arlington in the Aranda lawsuit, and it requested a response within two weeks. Then on August 8, 2005, an attorney for Forum Arlington sent a letter to an attorney representing Desperado's. The letter stated that "[a]s you are aware, we have previously requested a copy of any and all insurance policies which cover your client, Desperado's. As of this date, we [have] not been provided with any of those documents." The letter notes that the lease required Desperado's to maintain a policy of liability insurance and to have listed Forum Arlington as an additional insured. The letter goes on to say that "[i]t is my understanding that your client has either not maintained a policy of insurance or has failed to list my client as an additional insured on such policy." The letter notes that because of this failure, Forum Arlington had filed a cross-action against Desperado's in the Aranda suit. This letter clearly notified Desperado's

8

attorney of Forum Arlington's belief that his client was not in compliance with the lease agreement.

Furthermore, in an affidavit filed with Stanton's response to the summary judgment motion, he stated that MCC was a corporation he had formed to run two adjacent nightclubs on the leased premises. Other evidence shows that one of those clubs was Desperado's. During the existence of an attorney-client relationship, knowledge acquired by the attorney is imputed to the client.[9] Furthermore, in the cross-action filed against MCC in the Aranda lawsuit, Forum Arlington alleged that MCC "was required to maintain a policy of general liability insurance" and that MCC "breached this contract." Thus, by at least August 2005, Stanton had received written notice that he was not in compliance with the lease terms and also that Forum Arlington was pursuing steps to assert its legal rights resulting from the noncompliance. If this noncompliance continued for fifteen days without Stanton curing or attempting to cure, then such noncompliance would constitute an event of default under the lease, and Forum Arlington could terminate the lease by giving twenty days' notice. The evidence Stanton filed with his response to the summary judgment motion shows that he did not obtain insurance until at least April 2006. Thus, he did

---

[9] *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006).

not cure his noncompliance within fifteen days of receiving notice. Accordingly, Forum Arlington could thereafter terminate the lease by providing twenty days' notice that it was doing so.

On August 31, 2006, an attorney for Forum Arlington sent Stanton a letter informing him that he was still in default and giving him twenty days' notice to cure any default. The letter states that Stanton and Forum Arlington had previously entered into a May 25, 2006 letter agreement in which Stanton had agreed to provide proof that he had insurance coverage for the leased premises. The letter then stated that Stanton had failed to do so. Although the letter could have been more clear, it did notify Stanton's attorney that Stanton was in violation of the lease and specifically noted that the lease required Hospitality to maintain liability insurance naming Forum Arlington as an additional insured and that Stanton had failed to provide proof that he had such insurance despite previous requests and a letter agreement on the subject. The letter did not, however, state that the lease would be terminated in twenty days.

On September 21, 2006, Forum Arlington's attorney sent a letter to Stanton stating that the lease had been terminated as of September 19, 2006 due to Stanton's unremedied default under section fourteen. If the August 2006 letter was not sufficiently clear to constitute a termination letter, the

10

September letter did clearly give Stanton notice that Forum Arlington was exercising its right to terminate the lease. Thus, at the latest, the lease terminated twenty days after the September 21, 2006 letter.

The summary judgment evidence demonstrates that Stanton was required to maintain insurance on the premises naming Forum Arlington as an additional insured and to provide the originals or copies of such policy to Forum Arlington; that as early as 2005, Forum Arlington had reason to believe that Stanton was not in compliance with his lease; that in 2005 Forum Arlington notified Stanton of its belief that he was not in compliance with his lease; and that in 2006, Forum Arlington terminated the lease for the noncompliance. The certificates of insurance that Stanton filed with his response did not demonstrate that he had cured or had begun to cure his default within fifteen days of receiving notice of his noncompliance in 2005.

Furthermore, although Stanton argued that the lease could not have been terminated for failure to provide proof of insurance because he had provided such proof to Forum Arlington, there was no competent evidence that Stanton had ever demonstrated to Forum Arlington that he had obtained insurance prior to Forum Arlington's exercise of its option to terminate the lease, despite Forum Arlington's statements to him that he was in violation of the lease and Forum Arlington's repeated requests that he provide proof of insurance. At the latest,

11

Forum Arlington notified Stanton that it was terminating the lease on September 21, 2006, and Stanton did not file his response to the summary judgment motion with the certificate of insurance attached until November 14, 2006, more than twenty days after the termination notice. The only summary judgment evidence that he had ever previously demonstrated to Forum Arlington that he had insurance on the property was a statement in his affidavit that certificates of liability insurance "have been provided to Forum Arlington on more than one occasion." He did not state when he had provided proof of insurance, and specifically, he did not assert that he had provided proof before Forum Arlington notified him that the lease had been terminated. His conclusory statement is not competent evidence that he had provided proof of insurance to Forum Arlington before it terminated the lease or that he timely cured or began to cure his noncompliance.[10]

Stanton further argues that the reason Forum Arlington gave him for terminating the lease and the ground asserted by Forum Arlington in its motion for summary judgment were that he had failed to provide *proof* of insurance,

---

[10] *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues."); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion.").

but that Forum Arlington's reply in support of the motion asserted for the first time that the issue was his failure to *maintain* insurance. Specifically, he contended that in its reply, Forum Arlington changed the issue to whether Forum Arlington could properly terminate the lease for Stanton's failure in 2006 to provide proof that he had maintained insurance in 2003. He contends that by waiting until 2006 to provide notice of default with respect to 2003, Forum Arlington made it impossible for him to cure the default and that such failure could not be the basis for termination of the lease.

Forum Arlington's motion alleged that Stanton had breached the lease by failing to maintain insurance. And when Forum Arlington requested Hospitality and Stanton to provide proof of insurance, it was contending that Stanton had failed to maintain insurance and was asking him to demonstrate, by providing proof of insurance, that he was not in default. Furthermore, even if we were to interpret Forum Arlington's summary judgment motion as asserting as the ground for termination merely that Stanton had failed to provide proof of insurance rather than that he had failed to maintain insurance, as stated above, there was sufficient evidence that Stanton had failed to provide such proof and no competent evidence that Stanton provided proof to Forum Arlington before it terminated the lease.

13

Because Stanton caused an event of default by failing to maintain insurance and to provide the originals or copies of an insurance policy to Forum Arlington and by failing to cure this noncompliance within fifteen days of being notified of the matter, and because Forum Arlington complied with its obligation under the lease to provide twenty days' notice before terminating the lease, we hold that the trial court did not err by concluding as a matter of law that Forum Arlington had properly terminated the lease. Accordingly, we overrule Stanton's issue.

Having overruled Stanton's sole issue, we affirm the judgment of the trial court.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED: April 23, 2009

14